IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STATE FARM FIRE & CASUALTY COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 2:22-515 |
| v. | ) ) | Judge Cathy Bissoon |
| CHRIS A. WILLIAMS, *et al.*, | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

**I. MEMORANDUM**

Pending is Plaintiff's Motion for Judgment on the Pleadings (Doc. 18). Although Defendants filed an Answer to Plaintiff's Complaint (Doc. 14), they failed to respond to the Motion for Judgment on the Pleadings, despite receiving an extension to do so (Doc. 25). For the reasons stated more fully below, Plaintiff's Motion will be granted.[1]

**A.   Background**

State Farm Fire and Casualty Company ("Plaintiff" or "State Farm") seeks a declaration, pursuant to the Declaratory Judgment Act, 28. U.S.C. § 2201, *et. seq.*,[2] that it has no duty to

---

[1] In deciding a motion for judgment on the pleadings, this Court considers the pleadings and attached exhibits, undisputedly authentic documents where the claims are based on those documents, and matters of public record. The Court construes all allegations and reasonable inferences in the light most favorable to the nonmoving party. Wolfington v. Reconstructive Orthopaedic Assocs. II PC, 935 F.3d 187, 195 (3d Cir. 2019); Fed. R. Civ. P. 12(c). Because Defendants failed to respond to Plaintiff's Motion, the Court is limited to a consideration of the pleadings filed by the parties and the motion, brief and exhibits filed by Plaintiff.

[2] The Court's powers under the Declaratory Judgment Act ("DJA") are discretionary. 28 U.S.C. § 2201. Plaintiff's declaratory-judgment requests here, however, are indistinguishable from the numerous others that routinely, and properly, have been litigated in this context in this Court, and the Court similarly exercises its discretionary jurisdiction here. *See* Acuity v. R&R Pools & Constr., Civ. Action No. 17-951, 2018 WL 10229730 (W.D. Pa. Mar. 22, 2018).

defend or indemnify Defendant Chris A. Williams ("Williams")[3] for the Underlying Action captioned Ward v. Williams, *et al.*, No. 2021-6124 (Washington Cnty. Ct. Comm. Pl.) (attached as Ex. C to Complaint (Doc. 1)), under State Farm Homeowners Policy No. 38-B5-E380 and State Farm Personal Liability Umbrella Policy ("PLUP") No. 38-CT-G210-1 (attached as Exs. A & B to Compl., respectively).  The underlying action was initiated by Anthony Ward ("Ward"), who alleges that he was shot in the leg by Williams during an altercation in a movie theater.  *See* Compl. ¶¶ 13-14.  Plaintiff agreed to provide a defense to Williams in the underlying action, subject to a reservation of rights dated February 9, 2022.  *See* Compl. ¶ 16 & Ex. D.

Plaintiff argues that its duty to defend, as it is defined under Pennsylvania law, has not been triggered as to Williams because the Underlying Complaint does not allege that Williams engaged in conduct that could be considered accidental, and, thus, there was no occurrence as the policy requires.

The Underlying Complaint asserts twelve counts in total, with five pertaining specifically to Williams.  The relevant general factual allegations in the Underlying Complaint (Doc. 1-3) are as follows:

> 12.     Ward was at the Hollywood Theaters in the Crown Center Mall in Washington, Pennsylvania on March 23, 2019.
>
> 13-15. Ward exited the movie theater and was walking down the theater's hallway. Williams followed Ward down the hallway and called him a derogatory name.
>
> 16.     Ward turned around, and Williams pointed a handgun at Ward's face.
>
> 17-18. Ward and Williams wrestled to the ground.  Ward grabbed Williams's arms and bicep to prevent him from discharging the firearm at Ward.
>
> 19-20. The gun discharged and shot Ward in the lower portion of his right leg causing substantial pain and profuse bleeding.

---

[3] Shari L. Williams is named as a defendant as the named insured on the State Farm PLUP Policy.  Plaintiff has no direct claim against Shari Williams.  Compl. ¶ 7.

Counts I and II of the Underlying Complaint assert causes of action for assault and battery against Williams.  The count-specific allegations include that Williams "intentionally inflicted severe and grievous physical injuries upon [Ward], as well as emotional distress." (Doc. 1-3 ¶¶ 38, 44).  Count III asserts a cause of action for negligence against Williams.  The count-specific allegations include that Williams "negligently and carelessly discharged a firearm at . . . Ward, which one of the bullets hit [Ward] causing [Ward] to suffer severe and serious injuries."  (Doc. 1-3 ¶ 51).  Count III also alleges that Williams was negligent in "discharging a firearm capable of inflicting serious bodily injury and/or death in the direction of" Ward.  (Doc. 1-3 ¶ 52.d).  Count VIII asserts a cause of action for intentional infliction of emotional distress against Ward.  (Doc. 1-3 ¶¶ 142-145).  Count XII seeks punitive damages because "the conduct of [Williams] towards [Ward] was outrageous, reckless, and/or wanton and/or grossly negligent and in total disregard for the safety of [Ward]."  (Doc. 1-3 ¶ 156).

Plaintiff issued Homeowners Policy number 38-B5-E380 to Williams for the policy period from June 25, 2018 through June 25, 2019.  (Doc. 1-1).  With respect to personal liability coverage, the Policy provides as follows:

> **COVERAGE L – PERSONAL LIABILITY**
>
> If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will:
>
> 1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and
>
> 2. provide a defense at our expense by counsel of our choice . . . Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence**, equals our limit of liability.

(Doc. 18 ¶ 16) (citing Doc. 1-1) (emphasis in original).  The Policy defines "occurrence" as follows:

> 7. "**occurrence**", when used in Section II [describing personal liability coverage] of this policy, means an accident, including exposure to conditions, which first results in:
>
> a. **bodily injury**; or
> b. **property damage**;
>
> during the policy period. All **bodily injury** and **property damage** resulting from one accident, series of related accidents or from continuous or related exposure to the same general conditions is considered to be one **occurrence**.

Id. ¶ 17 (citing Doc. 1-1) (emphasis in original).

Plaintiff issued PLUP Policy No. 38-CT-G210-1 to Chris and Shari Williams for the policy period from July 23, 2018 through July 23, 2019. (Doc. 1-2). With respect to personal liability coverage, the PLUP Policy provides as follows:

> **COVERAGE L – PERSONAL LIABILITY**
>
> If a claim is made or a suit is brought against an **insured** for damages because of a **loss** for which the **insured** is legally liable and to which this policy applies, we will pay on behalf of the **insured**, the damages that exceed the **retained limit** . . .
>
> **DEFENSE**
>
> If a suit is brought against any **insured** for damages because of a **loss** to which this policy applies, **we** will provide a defense to the **insured** at **our** expense when the basis for the suit is a **loss** that is not covered by any other insured policy but is covered by this policy. . . .

(Doc. 18 ¶ 18) (citing Doc. 1-2) (emphasis in original). The PLUP Policy defines "loss" as follows:

> 7. "**loss**" means:
>
> a. an accident, including accidental exposure to conditions which first results in **bodily injury** or **property damage** during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one **loss** . . . .

Id. ¶ 19 (citing Doc. 1-2) (emphasis in original).

**B.**     **Analysis**

As a preliminary matter, the Court agrees with Plaintiff that, under Pennsylvania law and as a matter of public policy, punitive damages are not covered under Pennsylvania insurance policies. *See* Pl. Br. at 12 (citing Aetna Cas. & Surety Co. v. Roe, 650 A.2d 94, 100 (Pa. Super. Ct. 1994)). Accordingly, the Court will grant Plaintiff's Motion insofar as it seeks a declaration that there is no coverage available to Defendant Williams under the Policy for any portion of any award that constitutes punitive damages.

Under Pennsylvania law, "[a]n insurer's duty to defend an insured in litigation is broader than the duty to indemnify." Frog, Switch & Mfg. Co. v. Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999) (citing Erie Ins. Exch. v. Claypoole, 673 A.2d 348, 355 (Pa. Super. Ct. 1996)). The "obligation to defend arises whenever the complaint filed by the injured party may *potentially* come within the coverage of the policy." Gedeon v. State Farm Mut. Auto. Ins. Co., 188 A.2d 320, 322 (Pa. 1963). "If a single claim in a multi-claim lawsuit is potentially covered, the insurer must defend all claims until there is no possibility that the underlying plaintiff could recover on a covered claim." Frog, Switch & Mfg. Co., 193 F.3d at 746 (citing Erie Ins. Exch. v. Transamerica Ins. Co., 533 A.2d 1363, 1368 (Pa. 1987)). The duty to defend continues until such time as the claim is limited to relief that the policy does not cover. Gen. Acc. Ins. Co. of Am. v. Allen, 692 A.2d 1089, 1095 (Pa. 1997). Conversely, if an injured party's complaint does not potentially come within the coverage of the policy, the duty to defend is not activated. *See* Claypoole, 673 A.2d at 355-56 ("[O]nly allegations contained within the underlying complaint pertaining to injuries which are either actually or potentially within the scope of the insurance policy obligate the insurer to defend the insured.").

A court ascertaining whether an insurer has a duty to defend its insured makes its determination by defining the scope of coverage under the insurance policy on which the insured relies and comparing the scope of coverage to the allegations of the underlying complaint. Ramara, Inc. v. Westfield Ins. Co., 814 F.3d 660, 673 (3d Cir. 2016); Allen, 692 A.2d at 1095. If any of the allegations of the underlying complaint potentially could support recovery under the policy, there will be coverage at least to the extent that the insurer has a duty to defend its insured in the case. Ramara, Inc., 814 F.3d at 673; Allen, 692 A.2d at 1095. In determining the scope of coverage, "the particular cause of action that a complainant pleads is not determinative," and instead, "it is necessary to look at the factual allegations contained in the complaint." Mut. Benefit Ins. Co. v. Haver, 725 A.2d 743, 745 (Pa. 1999).

The insured has the initial burden of establishing coverage under an insurance policy. Butterfield v. Giuntoli, 670 A.2d 646, 651–52 (Pa. Super. Ct. 1995). If coverage is established, the insurer then bears the burden of proving that an exclusion applies. Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999).

The Court's first task, as noted, is to ascertain the scope of the policy's coverage. Interpretation of an insurance policy is a question of law for the Court, and the Court's "primary goal . . . is to ascertain the parties' intentions as manifested by the policy's terms." Liberty Mut. Ins. Co. v. Sweeney, 689 F.3d 288, 293 (3d Cir. 2012) (quoting Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 897 (Pa. 2006)).

In this case, coverage for bodily injury claims is triggered only by an "occurrence," which is defined to mean an "accident." Thus, the policy's "bodily injury" coverage only applies to the extent the shooting of Ward was an "accident." Although the term "accident" is not

further defined in the policy, Pennsylvania law supplies meaning to that term, as explained by the Court of Appeals for the Third Circuit:

> In Donegal Mutual Insurance Co. v. Baumhammers, the Supreme Court of Pennsylvania said that, when "accident" is undefined in an insurance policy, Pennsylvania courts should treat the term as "refer[ing] to an unexpected and undesirable event occurring unintentionally ...." 595 Pa. 147, 938 A.2d 286, 292 (2007). [T]he key term in the definition of the "accident" is "unexpected" which implies a degree of fortuity. An injury therefore is not "accidental" if the injury was the natural and expected result of the insured's actions.... See also Minnesota Fire and Cas. Co. v. Greenfield, 579 Pa. 333, 855 A.2d 854, 870 (2004) ("'Accident' has been defined in the context of insurance contracts as an event or happening without human agency or, if happening through such agency, an event which, under circumstances, is unusual and not expected by the person to whom it happens.") (internal citations omitted). That definition comports with the basic purpose of insurance: "to cover only fortuitous losses." United Servs. Auto. Ass'n v. Elitzky, 358 Pa.Super. 362, 517 A.2d 982, 986 (1986).

Auto-Owners Ins. Co. v. Stevens & Ricci Inc., 835 F.3d 388, 405 (3d Cir. 2016). In other words,

> [a]n accident, simply stated, is merely an unanticipated event; it is something which occurs not as the result of natural routine but as the culmination of forces working without design, coordination or plan. And the more disorganized the forces, the more confusedly they operate, the more indiscriminately haphazard the clash and intermingling, the more perfect is the resulting accident.

State Farm Fire & Cas. Co. v. Estate of Mehlman, 589 F.3d 105, 111 (3d Cir. 2009) (citing Brenneman v. St. Paul Fire & Marine Ins. Co., 192 A.2d 745, 747 (Pa. 1963)). "Moreover, '[q]ualification of a particular incident as an accident seems to depend on two criteria: 1. the degree of foreseeability, and 2. the state of mind of the actor in intending or not intending the result." Id. (citing Black's Law Dictionary 16 (9th ed. 2009)) (alteration in the original).

In determining whether the injury in question resulted from an accident, the Court must view the operative events from the perspective of Williams, since State Farm insured him and not Ward. Estate of Mehlman, 589 F.3d at 111. Whether the events were unexpected from the victim's point of view is therefore irrelevant. See id. ("Accordingly, it is of no significance in

7

our analysis that the events in question were unexpected, as they surely must have been, when viewed through the eyes of [the victim].").

With this understanding in mind, the Court must compare the scope of coverage to the allegations in the Underlying Complaint. The analysis is driven not by the causes of action pled, but by the factual allegations set forth in the complaint. See Haver, 725 A.2d at 745. Here, despite one of the relevant counts in the Underlying Complaint encompassing the term "negligence," it is clear that any injury suffered by Ward was not "accidental." Assault does not happen by accident. Here, by initiating the conflict and intentionally pointing a loaded gun at Ward, Williams engaged in purposeful conduct resulting in harm to Ward. There remains no dispute as to whether the facts alleged in the Underlying Complaint describe an accident – they simply do not.

Because the language in the Policies is clear that State Farm's duty to defend extends only to an "occurrence," which is defined by the Policies as an accident, and because the Court finds the allegations in the Underlying Action do not describe accidental behavior, the Court finds that State Farm has no duty to defend Williams in the Underlying Washington County Court of Common Pleas Action, No. 2021-6124. Accordingly, Plaintiff's Motion for Judgment on the Pleadings as it relates to State Farm's duty to defend and indemnify Williams in the Underlying Action will be granted.

## II.   ORDER

For the reasons stated more fully above, IT HEREBY IS ORDERED that Plaintiff's Motion for Judgment on the Pleadings (**Doc. 18**) is **GRANTED**.

IT IS FURTHER ORDERED that Plaintiff State Farm Fire and Casualty Company has no obligation to defend or indemnify Defendants for the underlying action captioned Ward v.

<u>Williams, *et al.*</u>, No. 2021-6124, Washington County Court of Common Pleas, under State Farm Homeowners Policy No. 38-B5-E380 or State Farm Personal Liability Umbrella Policy No. 38-CT-G210-1.

 IT IS FURTHER ORDERED that Plaintiff State Farm Fire and Casualty Company has no obligation to Defendants for any portion of any award that constitutes punitive damages.

 IT IS SO ORDERED.

March 30, 2023           s\Cathy Bissoon
                  Cathy Bissoon
                  United States District Judge

cc (via ECF email notification):

All Counsel of Record